567 A.2d 308

**Elizabeth O'CALLAGHAN, Appellant,**

**v.**

**William O'CALLAGHAN, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1989.

Filed Nov. 20, 1989.

Reargument Denied Jan. 2, 1990.

320

Jane M. Schoener, Philadelphia, for appellant.

Ronald Ervais, Philadelphia, for appellee.

Before MONTEMURO, KELLY and HESTER, JJ.

MONTEMURO, Judge:

This is an appeal from a final decree in divorce and equitable distribution.

The parties were married in 1953, and separated in November, 1982, two months after appellant's Complaint in Divorce was filed. The complaint was predicated upon allegations of adultery, indignities, cruel and barbarous treatment, and irretrievable breakdown. Since the initial pleading, the record has become a repository for accusations of misbehavior filed in various formats by one party against the other; the course of conduct by both parties thus revealed, during the marriage and subsequent to separation, may charitably be termed uncivilized. The excuse offered by both is that each acted only in response to the other's provocation. Included in the filings have been appellee's petition for injunctive relief to prevent appellant from harassing his employers, customers, co-workers and suppliers. The trial court's grant of such relief was affirmed by this court.

▮▮▮▮▮▮▮▮▮▮

Several masters were assigned to the case in succession, and, after three days of hearings held by the fourth and final Master, a recommendation of divorce [1] and allocation of marital property was made. Recourse was had to the trial court on exceptions, culminating in the order now appealed from, which granted the parties a § 201(d) divorce, and allocated to appellant 60% of marital assets equalling $128,162.18.

Appellant first argues that the court's grant of a divorce under section 201(d) [2] of the Divorce Code was in error. While appellant does not dispute the propriety of a divorce per se, she requests entry of a decree on alternate grounds, e.g., adultery, indignities, or cruel and barbarous treatment, claiming that 201(d) grounds are absent from the pleadings.

▮▮ The trial court, on the recommendation of the Master, refused to divorce the parties on fault grounds as there is ample evidence in the record to demonstrate that despite appellee's abusive behavior, appellant was not an injured and innocent spouse, a point which she disputes. Although several times appellant returned violence for violence, expressing regret while testifying that she had not variously shot, stabbed or strangled appellee on those occasions, appellant nevertheless contends that her actions were dictated by a sense of self-preservation. The reason for appellant's insistence that her own behavior was beyond re-

---

1. The Master suggested a divorce under section 201(c) of the Code, relating to irretrievable breakdown. However, the trial court found this a procedurally inappropriate basis for dissolving the marriage, as appellant refused to file an Affidavit of Consent as the statute requires.

2. **23 Pa.S. § 201(d)(1).** It shall be lawful for the court to grant a divorce where a complaint has been filed alleging that the marriage is irretrievably broken and an affidavit has been filed alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken, and:
 (i) the respondent does not deny the allegations set forth in the affidavit; or
 (ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken.

proach concerns the award of permanent alimony, which the trial court denied. In her second issue, appellant continues to argue the self-defense theory in advancing her suggested grounds for the divorce.

However, we need not reach the merits of these two arguments as the ground that the parties had lived separate and apart for three years subsequent to separation was in fact pleaded by appellee in his Amendment to Answer and Counterclaim, filed December 1, 1987, with affidavit attached, after the Master's report was filed, but prior to final determination by the court. Our affirmances can depend upon any basis, even if the reasons offered by the trial court for its decision are incorrect, *Coatesville Development Company v. United Food and Commercial Workers, AFL–CIO*, 374 Pa.Super. 330, 542 A.2d 1380 (1988). Therefore, despite the court's having overlooked the existence of the particular document raising 201(d) grounds, we find that the three year separation had been presented,[3] and that the court correctly based its decision to terminate the marriage thereon.

Appellant next claims that the court erred in refusing to award her permanent alimony, having failed to consider all the relevant factors as prescribed by the Code.[4] Specifical-

---

**3.** We would also note, as did the trial court, that appellant at no time has contested the duration of the separation, and, indeed, testified at the hearing that she had insisted upon appellee's leaving the marital residence on October 2, 1982. The Decree, entered March 1, 1988, is therefore clearly more than three years subsequent. In addition there was reference made of record to a stipulation, signed by both counsel, to the effect that the requisite separation period had occurred. This document, although apparently filed, does not appear on the docket; its existence is recognized only because transcribed discussion concerning it further supports the propriety of the 201(d) divorce. *See, Wiegand v. Wiegand*, 363 Pa.Super. 169, 525 A.2d 772 (1987).

**4. 23 P.S. § 501. Alimony**
 (a) The court may allow alimony as it deems reasonable, to either party, only if it finds that the party seeking alimony:
 (1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and
 (2) is unable to support himself or herself through appropriate employment.

ly, appellant urges that her age, education and physical condition militate against the finding that she can engage in gainful employment, particularly to the extent found by the Master.

■ Preliminarily, we note that our scope of review in assessing the propriety of a grant or denial of alimony is whether the trial court abused its discretion. In the context of alimony determinations proper employment of judicial discretion includes the mandate to apply the Code in a compassionate and reasonable manner, *Dyer v. Dyer*, 370 Pa.Super. 377, 536 A.2d 453 (1988), so that the overriding goal of effectuating economic justice between the parties may be achieved. Clearly the accomplishment of this purpose requires that we avoid an overly mechanistic application of the factors to be considered. *Nuttall v. Nuttall*, 386 Pa.Super. 148, 562 A.2d 841 (1989); *Williams v.*

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as a homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

Williams, *373 Pa.Super. 143, 540 A.2d 563 (1988). Absent such abuse, we will not disturb the court's decision.* Miller v. Miller, *352 Pa.Super 432, 508 A.2d 550 (1986).*

 The parties to this case were married for 29 years, and produced four children, all of whom were emancipated adults at the time of the divorce. Appellant is 56 years old with a high school education, and suffers from rheumatoid arthritis, which has made her progressively disabled. Despite these facts, the Master concluded, and the trial court agreed, that appellant was capable of earning $35,000 per year as a paralegal experienced in immigration work. It was explained that the nature of appellant's relationship with her former employer, a George Gershenfeld, her counsel until sometime in 1987, was not limited to the usual one of employee to employer, or attorney to client: appellant's trips, her food bill, her legal representation, and her transportation were provided, items not accounted for by her salary, which as a result, did not reflect her worth. Moreover, Mr. Gershenfeld lived with appellant in the marital residence for over a year, and was co-owner with her of a business, the value of which is also disputed. In the trial court's view, the limitations imposed by appellant's medical condition were adequately addressed by having been factored into the award to her of 60% of the marital estate, which it was further concluded, might reasonably be expected to garner a return of 10% or $12,000 per year.

Appellee is a 59 year old college graduate, with some post graduate education, who earns approximately $50,000 per year as a pharmaceutical salesman with Hoffman LaRoche. He testified to being in good health despite the accusations leveled by appellant of his excessive indulgence in alcohol.

Appellant testified that her earnings as a paralegal never exceeded $150 per week, a salary consistent with her physical limitations, although in 1971, when first employed by Mr. Gershenfeld, she received $130 per week. The differential over approximately 13 years is unconvincing given the extensive responsibility of appellant's position in Mr. Gershenfeld's law firm. Therefore, we agree that appellant's

past wages in Mr. Gershenfeld's employ do not accurately reflect her earning power at that time. However, we find unacceptable the Master's assessment of appellant's current potential marketability, as it is unsupported by any evidence. Quite the contrary, since the unrebutted testimony concerning appellant's illness is inconsistent with normal employability; according to medical records seemingly ignored by the Master and the trial court, appellant is clearly hampered by considerably more than "some physical limitation." (T.C.O. at 14) Even appellee's counsel noted that appellant may be eligible for Social Security disability payments (N.T. August 11, 1988 at 21, Appellee's Brief at 9), surely a position inconsistent with the argument that she is fully capable of self-support, and one, moreover, which does not affect appellee's financial responsibility. *Compare, Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). Given these facts, we agree with appellant that the trial court abused its discretion in finding so little impediment to her professional functioning. See, *Hess v. Hess,* 327 Pa.Super. 279, 475 A.2d 796 (1984).

Appellant next claims that the trial court erred in failing to award her a continuation of her present medical coverage to be maintained by appellee. We agree, but find that the question of appropriate coverage is soluble in conjunction with an award of permanent alimony.

Next appellant contests the award of present value of appellee's pension, arguing that only the deferred distribution method would assure her some income in the future. However, once an award of permanent alimony is made, appellant's lack of a current income source will be remedied, leaving the immediate offset method as the more viable plan. As appellant herself is aware, the reason for such a distribution is to "avoid further entanglement between the parties." *Braderman v. Braderman,* 339 Pa.Super. 185, 198, 488 A.2d 613, 620 (1985). *See also, Hutnik v. Hutnik,* 369 Pa.Super. 263, 535 A.2d 151 (1987). The animosity between these parties is extraordinary even by the usual standard of domestic relations cases, and official supervi-

sion of alimony payments will be crucial. We see no reason to further burden our courts, and affirm the trial court's choice of a method of allocating appellee's pension.

Finally, appellant presents us with several claims relating to the equitable distribution of marital property. These are largely repetitions of arguments made earlier in other contexts but tending toward the same conclusion, viz., the finding as to the amount of return appellant might receive for her share of the marital assets, the finding as to appellant's employability, and the finding as to her earning potential. One of these claims, however, is worthy of attention, and concerns the valuation of Bet Tee Oh, Ltd., a joint import/export venture of appellant and George Gershenfeld. The record reveals that appellant was the incorporator, sole named shareholder, and president of the corporation which was formed in January, 1982 with an infusion of $10,000 capital. Despite appellant's disclaimers of involvement with the company, she did travel to the Orient and South America, at least partially on company business. The court notes that although Mr. Gershenfeld represented the company to have made no sales, (his) total investment had been over $100,000.

Appellant's share of the business to be included as an item of marital property for distribution was assessed by the trial court, adopting the Master's recommendation, at $5,000. As this finding is borne out by the testimony at hearing, we reject appellant's challenge to its validity.

Accordingly, having found that the trial court's dissolution of the marriage on the basis of § 201(d) of the Divorce Code, and its proportional distribution of marital property to be correct, to that extent we affirm the trial court's actions. Insofar as permanent alimony and medical benefits are concerned, however, we reverse and remand for proceedings consistent with this Opinion.

Affirmed in part, reversed in part, and remanded. Jurisdiction is relinquished.