615 A.2d 1369

**Richard J. SCHNEEMAN, Appellant,**

**v.**

**Patricia Ann SCHNEEMAN, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 26, 1992.

Filed Nov. 13, 1992.

Dale Fouse, Asst. Dist. Atty., Aliquippa, for appellant.

Robert J. Taylor, Ambridge, for appellee.

Before MONTEMURO, KELLY and BROSKY, JJ.

KELLY, Judge:

In this appeal, we are again called upon to determine whether part of a state employee's pension is exempt from marital property because the employee did not contribute to the Social Security system. We conclude that the principles of *Cornbleth v. Cornbleth*, 397 Pa.Super. 421, 580 A.2d 369 (1990),

*allocatur denied,* 526 Pa. 648, 585 A.2d 468 (1991), are applicable to this case and that, therefore, the portion of the state employee's pension which is "in lieu of Social Security" is exempt from marital property. We also discuss four other equitable distribution and alimony issues raised by the parties. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Beginning with the trial court's factual findings, the background of this case may be summarized as follows.

"1. The parties were married on October 17, 1964 and separated permanently on or about June 1, 1986. Both parties are in their late 40's and are in good health.

"2. At the time of the separation, the parties were the owners of a residence (the "Marital Residence") located on Blackwood Road in Chippewa Township. The Marital Residence was sold on November 1, 1988, and the net proceeds were deposited into and remain in an interest-bearing escrow account. At the time of the second hearing that account had a balance of approximately $30,000. The parties have agreed on the record that that account, including accrued interest, should be divided equally between them.

"3. The Wife lived in the Marital Residence from the date of the separation, June 1, 1986, to the date of its sale, November 1, 1988.

"4. The Husband made the mortgage payments for the Marital Residence until a support order was entered in October of 1986. Although the support order appeared to contemplate the Wife's making the mortgage payments thereafter, the payments were not made and, in December of 1986, the mortgagee threatened foreclosure.

"5. In response to the threatened foreclosure, the Husband brought the mortgage current and obtained an agreement from the mortgagee whereby the mortgagee would accept interest only on condition that the Marital Residence be listed and sold. At the same time the Husband secured an order of

court which authorized him to pay the interest directly to the mortgagee, to pay the balance to Domestic Relations, and thereby to received credit for the support payment in full.

"6. On March 10, 1988, when the mortgagee would no longer accept interest payments only, the Husband procured an order of court authorizing him to pay the interest and some principal directly to the mortgagee and the balance to Domestic Relations, and thereby to receive credit for the full support payment.

"7. During the time she remained in the Marital Residence, the Wife contributed toward the payment of the mortgage under the court orders above referred to. She also did the routine maintenance and yard work and kept the Marital Residence in good and saleable condition.

"8. The Wife's mother gave the parties $4,000 when they purchased a home in Erie early in their marriage and another $4,000 when they purchased the Marital Residence. The mother has never been repaid for those cash gifts.

"9. At the time of the separation the Husband took with him a 1985 Cutlass titled in his name and left behind a 1975 Cutlass titled in the Wife's name. He also left behind a Honda motorcycle which was operable and which the Wife subsequently sold.

"10. When the Husband left he took with him only his automobile and a few tools. He left the house fully furnished and, except for a cedar chest which the Husband took just before the Marital Residence was sold, all of the household furniture, furnishings, and appliances have remained in the possession of the Wife.

"11. The Wife sold a dining room suit for $500, and other items of furniture, furnishings, and appliances were discarded as unusable. The items which remain in the Wife's possession have only nominal value.

"12. At or just prior to the time of separation the parties were the owners of [a] savings account at Dollar Savings Bank having a balance of $3,000. The Husband withdrew a substantial part of that account in the days or weeks prior to the

separation and the balance of it at separation. The $3,000 was marital property.

"13. The parties were the owners of a joint account with the Westinghouse Federal Credit Union having a balance of $850 at separation. This money was kept and used to pay insurance premiums and other joint expenses and need not be accounted for by either party.

"14. At the time of the separation the parties were the owners of United States savings bonds having a value of $1,700. The Husband took and cashed in those bonds. The bonds were marital property.

"15. In the latter years of the marriage the Wife was employed as a teacher's aide with the Beaver Valley Intermediate Unit. She will receive a pension at the time of her retirement. The present value of her pension rights as of the date of separation was $2,270. It is a marital asset.

"16. At the time of the separation the Wife was in possession of $700 in cash which she kept in the home. That cash was a marital asset.

"17. The Wife's name appears with her mother's on a joint savings account at Equibank. All deposits into that account have been made by the mother and the mother is the owner of it. No portion of the account is marital property.

"18. The Husband is a Pennsylvania state trooper, and began his employment on July 11, 1968. He has a vested pension and is eligible (but not required) to retire on January 1, 1992.

"19. The parties have agreed on the record that the marital portion of the Husband's pension should be divided equally between them.

"20. By stipulation of the parties, the Husband's pension has a present value of $93,640.

"21. The parties were married and living together while the Husband was employed with the state police from July 11, 1968, his date of hire, to June 1, 1986, the separation date.

Rounded off to the nearest whole month, this was a period of just one month less than 18 years, a total of 215 months.

For purposes of preparing and entering a Qualified Domestic Relations Order ("QDRO"), the numerator in the coverture fraction will be 215.

"22. The denominator in the coverture fraction to be utilized in a QDRO is the total number of months, rounded off to the nearest whole month, in which the Husband shall have been employed with the state police at the time of his retirement. The denominator is at yet unknown.

"23. Throughout the time the parties were married and lived together, the Wife was mother to the parties' two children and a homemaker. Her performance as wife, mother, and homemaker was excellent.

"24. The Wife has worked during the marriage. She has been a full time dentist's receptionist and an officer manager at Dahlkempers, each for a relatively short period of time. She began working as a teacher's aide in 1984, a job requiring no specialized training, and at the time of the second hearing her net pay for each biweekly pay period was $305.

"25. While the Wife can probably remain employed in her present job until she retires, the income from it will never be substantial. Because of her lack of educational background she has no opportunity to advance from her present position.

"26. One of the principal assets of this marriage is the Husband's "human capital," his earning capacity as a successful career state police officer. The Husband's earning capacity is and will remain nearly three times greater than the Wife's.

"27. By her contributions as wife and homemaker, the Wife has contributed substantially to the Husband's "human capital."

"28. During the last three months of the marriage, the Husband was seeing another woman, and he candidly admitted that he moved in with her when he left the Wife on June 1, 1986. The Husband has been guilty of marital misconduct.

"29. Following the separation, and particularly in the weeks leading up to her moving into her new home, the Wife has had to borrow money from members of her family and has incurred debts totaling approximately $11,000. To pay this back will require her to use a portion of the funds to be set apart to her in equitable distribution, leaving a lesser amount to invest for income purposes.

"30. While the Wife's needs are modest, they exceed her earnings, even when we take into account what she may earn by investing the funds received in equitable distribution.

"31. The Wife has been billed for legal services relating to the divorce and its ancillary proceedings which totaled $6,323 at the time of the second hearing. The fee is a reasonable one and the Wife has need for those services. However, because of the cash being distributed to her in equitable distribution, she is not in "actual need" of counsel fees from the Husband." Trial Court Opinion, November 9, 1990, at 2–8.

Based upon those findings, in its decree nisi, the trial court divorced the parties and further ordered and decreed that the Wife (appellee) receive fifty percent of the marital share of the Husband's (appellant's) State Employees' Retirement System Pension. The marital share was ordered to be computed by dividing 215 (the number of months which the pension was funded during the marriage) by the total number of months which the pension would be funded, including both marital and extra-marital time periods.

Moreover, appellant was ordered to designate appellee as beneficiary of one-third of the death benefits from the State Employees' Retirement System. Thereafter, he would owe appellee no further death benefits.

Additionally, the court decreed that appellant pay appellee $1,750 in order to balance to one-half each party's share in certain marital assets. Each spouse was awarded the tangible personal property in his or her possession, and the court dismissed all other equitable distribution claims.

Finally, the court directed appellant to pay appellee $300 per month as permanent alimony, until appellee began receiv-

ing her portion of the divided pension. The court then dismissed appellee's motion for counsel fees. The decree nisi was to become final unless legal cause was shown why it should not be. *See* Pa.R.Civ.P. 1920.52(a); 227.1; 227.4.

Appellant sought post-trial relief. Moreover, on December 7, 1990, he amended his motion to include an argument that the trial court should have applied the principles announced in *Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369 (1990), *allocatur denied,* 526 Pa. 648, 585 A.2d 468 (1991), which appeared in publication after the November 9, 1990 decree nisi. The court allowed such amendment, opening its decree nisi.

After a hearing on May 9, 1991, but without the benefit of appellee's Personal Earnings and Benefit Estimate Statement, the court found that *Cornbleth* was inapplicable to the instant case. Accordingly, the court re-entered its decree nisi.

Appellant revised his post-trial motion, indicating that the court ruled on the application of the *Cornbleth* case without receiving appellee's Social Security records. The court later accepted into evidence appellee's Personal Earnings and Benefit Estimate Statement. In November, 1991, the court again ruled that *Cornbleth* was inapplicable. On the same day, the court issued its final decree which substantially reiterated the November 9, 1990 decree nisi. However, the court also ordered equal division of the proceeds of the marital home. With regard to appellant's pension, the Court found that its present value on June 5, 1986, the date of separation, was $93,640. The court decreed that appellee's share was "$46,-820, plus all interest and other earnings on that fund of $46,820 which accrued between June 5, 1986 and [appellant's] retirement date." Trial Court Decree November 19, 1991, at 2. Appellant timely appealed from the final decree of November 19, 1991.

## II. ISSUES ON APPEAL

On appeal, the parties address the following issues.

1. DID THE TRIAL COURT ERR IN FAILING TO APPLY THE PRINCIPLES SET FORTH IN *CORNBLETH V. CORNBLETH* TO THIS CASE BY REFUSING TO DEDUCT FROM THE MARITAL PORTION OF PLAINTIFF'S PENSION THAT PART OF IT WHICH WILL BE PAID TO HIM "IN LIEU OF" SOCIAL SECURITY?

2. DID THE TRIAL COURT ERR WHEN IT REFUSED TO GRANT THE PLAINTIFF A CREDIT FOR THE FAIR RENTAL VALUE OF THE MARITAL RESIDENCE?

3. DID THE TRIAL COURT ERR IN GRANTING THE WIFE'S CLAIM FOR PERMANENT ALIMONY IN LIGHT OF HER ADMITTED EARNING CAPACITY AS WELL AS HER OVERALL FINANCIAL CIRCUMSTANCES AFTER THE DIVORCE IS GRANTED?

4. DID THE TRIAL COURT ERR BY [DEFERRING] DISTRIBUTION OF THE APPELLANTS STATE EMPLOYEE PENSION RATHER THAN EMPLOYING THE IMMEDIATE OFFSET METHOD?

5. DID THE TRIAL COURT ERR IN THE APPLICATION OF THE *BERRINGTON* CASE TO THE EQUITABLE DIVISION OF THE APPELLANTS PENSION IN THIS CASE?

Appellant's Brief at 6. We first address appellant's contentions regarding his pension: the extent to which it is marital property; the correct valuation method; and the correct method of distribution. Then we discuss appellant's remaining two arguments: whether appellant is entitled to a credit for the fair rental value and whether the trial court erred in granting appellee permanent alimony.

## III. STANDARD OF REVIEW

With regard to all of the marital property issues on appeal, our standard of review is as follows.

In assessing the propriety of a marital property distribution scheme, our standard of review is whether the trial court, by misapplication of the law, or failure to follow proper legal procedure, abused its discretion. *Johnson v. Johnson,* 365 Pa.Super. 409, 529 A.2d 1123 (1987); *Thomson v. Thomson,* 359 Pa.Super. 540, 519 A.2d 483 (1986); *Ganong v. Ganong,* 355 Pa.Super. 483, 513 A.2d 1024 (1986); *Sergi v. Sergi,* 351 Pa.Super. 588, 506 A.2d 928 (1986); *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). Moreover, "an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Sergi, supra,* 351 Pa.Super. at 591, 506 A.2d at 930, *citing Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 401(d), and the avowed objectives of the Divorce Code, that is, to "effectuate economic justice between [the] parties . . . and insure a fair and just determination of their property rights." 23 P.S. § 102(a)(6). *Hutnik v. Hutnik,* 369 Pa.Super. 263, 266–7, 535 A.2d 151, 152 (1987); *Liciardello v. Liciardello,* 391 Pa.Super. 219, 570 A.2d 1062 (1990).

*Zollars v. Zollars,* 397 Pa.Super. 204, 207–08, 579 A.2d 1328, 1330 (1990), *allocatur denied,* 527 Pa. 603, 589 A.2d 693 (1991).

## IV. APPELLANT'S STATE EMPLOYEE'S RETIREMENT SYSTEM PENSION

### A. PENSION AS MARITAL PROPERTY

█ Appellant maintains that our recent decision in *Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369 (1990), *allocatur denied,* 526 Pa. 648, 585 A.2d 468 (1991), should have been applied in this case. He maintains that *Cornbleth* sought to equalize, as much as possible, divorcees who do not contribute to the Social Security system with those who do contribute. Appellant argues that, when *Cornbleth* is properly applied instantly, a lesser portion of his pension should be considered marital property. We agree.

Generally, retirement benefits constitute marital property. *Braderman v. Braderman,* 339 Pa.Super. 185, 488 A.2d 613 (1985). However, by federal law, Social Security benefits are not marital property. 5 U.S.C. § 8345(j)(1). Also exempt from marital property is the part of a pension which is in lieu of Social Security. *Endy v. Endy,* 412 Pa.Super. 398, 603 A.2d 641 (1992); *Cornbleth v. Cornbleth, supra.*

In *Cornbleth,* this Court explained the rationale for exempting the portion of pension benefits which is in lieu of Social Security as follows.

> One of our goals with regard to equitable distribution must be to treat different individuals with differing circumstances in a fashion so as to equate them to one another as nearly as possible, thus, eliminating a bias in favor of, or against, a class of individuals. To the extent individuals with Social Security benefits enjoy an exemption of that "asset" from equitable distribution we believe those individuals participating in the [Civil Service Retirement System] must, likewise, be so positioned.

> \* \* \* \* \* \*

> To facilitate a process of equating CSRS participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security System. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes.

*Cornbleth, supra* at 425, 427, 580 A.2d at 371, 372. By providing the employee-spouse with sole ownership of that part of the pension which would have otherwise been contributed to Social Security benefits, we have equated, as nearly as possible, employee-spouses who contribute to Social Security benefits and those who contribute to only a separate pension fund which is not statutorily exempt from marital property.

*Id.* at 425, 580 A.2d at 371; *Endy, supra,* 412 Pa.Super. at 402, 603 A.2d at 645 (quoting *id.*). Although the *Cornbleth* case involved the Civil Service Retirement System, its principles have been applied in a case involving a State Police Officer's pension, because he was "without a Social Security benefit." *Endy, supra* at 402, 603 A.2d at 645.

Applying the principles of *Cornbleth* and *Endy* to the instant case, we find that the trial court erred in not reducing the size of the marital portion of appellant's pension. During the marriage, appellant was a state trooper who contributed to the State Employee Retirement System. He did not contribute to the Social Security system during his employment with the Commonwealth of Pennsylvania. Likewise, he can expect no Social Security benefits upon retirement. In order to similarly situate appellant with other employee-spouses, his pension must be offset by the amount he would have contributed to the Social Security system.

The trial court found that the present value of appellant's pension, at the time of separation, was $93,640. Although there was testimony that from $29,228 to $50,383 represented the amount which would have been in appellant's Social Security fund, had appellant contributed to the Social Security System, the trial court did not accept any figure. Accordingly, on remand, the trial court must determine the extent of the "Social Security portion." Then, "that portion should be exempted from the marital estate". *Cornbleth, supra,* 397 Pa.Super. at 425, 580 A.2d at 371 (footnote omitted).

We are compelled to reject the trial court's conclusion that *Cornbleth* is inapplicable to this case because of the disparity of earning capacity between the spouses. *Cornbleth* sought to similarly situate employee-spouses whose Social Security benefits were statutorily exempt from marital property with those employee-spouses who were without the benefit of the federal, statutory exemption. *Cornbleth, supra; Endy, supra.*[1] The

1. Although a panel of this Court stated that the rationale of *Cornbleth* was to equate the pensions of husband and wife, *see Elhajj v. Elhajj,* 413 Pa.Super. 578, 581, 605 A.2d 1268, 1271 (1992), that case is inapplicable instantly. In *Elhajj,* we distinguished *Cornbleth* because *Elhajj*

*Cornbleth* decision defined marital property. We explicitly removed from "marital property" the portion of the pension which would have been accumulated in the employee's Social Security fund, had he contributed to Social Security, *instead* of to a state system. To provide consistency in our laws, among employees, this determination is an algebraic one. *Cornbleth, supra.*

Computing marital property is the threshold step in the equitable distribution of property. The second stage is the correct valuation of the property. As we discuss below, this too is a mathematical computation. The third and last step is the equitable distribution of the properly valued, marital property. The trial court must consider equitable factors in allocating the property. *See* 23 Pa.C.S.A. § 3502(a). However, a trial court is not authorized to distribute an asset which is not marital property. *Berrington v. Berrington,* 409 Pa.Super. 355, 369, 598 A.2d 31, 38 (1991). In *Berrington,* we explained, "It is incorrect to apply 'moral' grounds in order to determine that which constitutes marital property. Marital property has been defined by statute." *Id.* Case law further defines the portions of pensions which are marital property. *Cornbleth, supra; Endy, supra.*

Therefore, the trial court erred in weighing equitable factors in calculating the portion of appellant's pension which was marital property. The trial court should consider equitable factors, but only *after* identifying, according to *Cornbleth,* what portion is marital property and valuating the marital property.

## B. VALUATION OF PENSION

■ Appellant's second argument with regard to his pension is that the trial court erred in calculating the value of the pension that is available for distribution. Specifically, appel-

involved spouses who *both* participated in the Civil Services Retirement System but did not participate in the Social Security System. While we were not inclined to extend the *Cornbleth* decision in *Elhajj,* we are bound to apply *Cornbleth* in the case *sub judice. See Endy v. Endy, supra* (applying *Cornbleth* in divorce action between Pennsylvania State Trooper and wife).

lant takes issue with the trial court's statement that the present value of the pension "as it increases in value through earnings and accumulations to the date of deferred distribution, is marital property." Trial Court Opinion, November 19, 1991, at 6. We agree that such conclusion is too broad.

■ Because pension benefits are deferred compensation, the portion of the retirement reserve attributable to the duration of the marriage is marital property. *Braderman v. Braderman,* 339 Pa.Super. 185, 195–96, 488 A.2d 613, 618 (1985). While increases due to interest or returns on investment in the value of the amount contributed during the marriage are marital property, contributions by the employee or employer after the date of separation are *not* marital property. *See Berrington v. Berrington,* 409 Pa.Super. 355, 368, 598 A.2d 31, 37 (1991).

Therefore, in this case, the trial court erred, to the extent it valued the marital property portion of the pension to include increases via contributions subsequent to the date of separation.[2] However, an increase in value due to "earnings" upon the corpus contributed during the marriage prior to separation was rightfully included.

## C. DISTRIBUTION OF MARITAL PORTION OF PENSION

■ Appellant's last contention with regard to his pension is that the trial court committed an error of law by employing the deferred method of distribution instead of the immediate offset method. Appellant cites the virtues of the immediate offset method and would invoke it to avoid hostile contact between the parties. We cannot agree that the trial court erred in choosing the deferred distribution method in this case.

■ Both the immediate offset method and the deferred distribution method are recognized and acceptable ways for distributing the marital portion of pension benefits. *Berrington, supra* at 372, 598 A.2d at 40; *Braderman, supra,* 339

---

**2.** We find no error with regard to the trial court's coverture fraction.

Pa.Super. at 197, 488 A.2d at 619. Both calculations must yield the same amount, but the trial court has discretion in choosing the more appropriate means. *See Berrington, supra; Endy, supra,* 412 Pa.Super. at 401, 603 A.2d at 644.

While the immediate offset method offers an end to the contact between the divorced parties, the deferred distribution method ensures economic justice in certain cases. This Court has explained:

> Although an immediate offset is preferred, this method is impractical where the parties do not possess enough assets to offset the pension award. When the value of the employee-spouse's pension far exceeds the value of the other marital property, the deferred distribution method must be used.

*Braderman, supra,* 339 Pa.Super. at 199, 488 A.2d at 620 (citations omitted).

We are not persuaded that the trial court erred in applying the deferred distribution method in this case. *See Zollars v. Zollars,* 397 Pa.Super. 204, 579 A.2d 1328 (1990), *allocatur denied,* 527 Pa. 603, 589 A.2d 693 (1991) (where record did not show that employee-spouse could buy non-employee-spouse's share of pension, use of deferred distribution was not erroneous). We leave to the trial court, in its determination of economic justice, a redistribution based upon the diminished marital property. *See* section IV, subsection A, subsection B, *supra.*

## V. CREDIT FOR RENTAL VALUE OF MARITAL HOME

■ Appellant's penultimate argument is that the trial court erred in not crediting him for his mortgage payments while appellee lived in the marital home. First, appellant maintains that he deserves a credit as of right. Additionally, appellant contends that prior court orders reflected that appellee's alimony *pendente lite* included a sum which should have been contributed, but was not, towards mortgage payments. We find no error with regard to this issue.

 While each party is entitled to his or her equitable share of marital property, including the fair rental value of the marital residence, *see e.g. Powell v. Powell,* 395 Pa.Super. 345, 577 A.2d 576 (1990), the trial court need not compute that equitable share as a credit to the non-possessory spouse, as long as the total distributory scheme is equitable. *Sutliff v. Sutliff,* 361 Pa.Super. 504, 525, 522 A.2d 1144, 1154 (1987), *rev'd on other grounds,* 518 Pa. 378, 543 A.2d 534 (1988). In equitably distributing the fair rental value between the parties, the trial court must consider the efforts of each party to preserve that asset. 23 Pa.C.S.A. § 3502(a)(7).

In the instant case, the trial court considered appellant's argument. The court concluded that the equitable distribution of assets resulted in no credit for appellant's mortgage payments while the wife lived in the marital residence. The trial court explained:

We shall not award the Husband rental value for the Wife's occupancy of the Marital Residence. We are aware that the Husband made the mortgage payment for the first six months after the separation, that he paid the property taxes for all of 1986, and that he paid the insurance premiums throughout. However, during those first six months the Wife was having to adjust to the shock of a shattered marriage and a seriously diminished income and standard of living. While we commend the Husband's behavior in this regard, we do not believe that it entitles him to a credit for rental. After January of 1987, payments were being withheld from the Wife's alimony pendente lite to pay the mortgage lender, at first for interest only, later for interest and a partial principal payment. The Wife maintained the property throughout and kept it in condition to make it saleable at a price which both parties agreed was a good one. Furthermore, the Wife's mother contributed substantially to the initial equity in the property; if credit for that should go to anyone, it should go to the Wife. We shall dismiss the Husband's claim for rental value as part of his equitable distribution share.

Trial Court Opinion, November 9, 1990, at 9–10. According to the trial court, appellant did not contribute more than his equitable share.

The record supports the trial court's analysis. Although appellant paid the mortgage, insurance and taxes, appellee received a diminished amount of alimony *pendente lite*. The trial court's order of January 5, 1987 merely changed the method by which the household bills were paid. Instead of appellee paying a share of mortgage, insurance and taxes directly, her alimony was reduced. Accordingly, she contributed indirectly. We find the trial court's refusal to grant appellant a credit to be appropriate. Accordingly, we affirm this portion of the trial court's final decree.

## VI. ALIMONY

■ Appellant's final contention is that the trial court abused its discretion in granting appellee permanent alimony. Appellant insists that appellee has an earning capacity higher than that which the trial court attributed to appellee. Appellant also maintains that the trial court impermissibly relied upon post-separation conduct. We do not agree that the trial court erred in awarding appellee permanent alimony.

In fashioning an alimony award, the trial court must consider the several factors enumerated in 23 Pa.C.S.A. § 3701(b).[3]

The determination of the amount to be awarded, whether of alimony or alimony pendente lite, rests in the sound discretion of the trial court. *Miller v. Miller*, 352 Pa.Super. 432, 441, 508 A.2d 550, 555 (1986). Absent an abuse of that discretion, an appellate court will not disturb the trial court's award. *Id.* In the context of such determinations, the proper employment of judicial discretion includes the mandate to apply the Divorce Code in a compassionate and reasonable manner to effectuate the overriding goal of achieving economic justice between the parties. *See e.g. O'Callaghan v. O'Callaghan*, 389 Pa.Super. 319, 567 A.2d 308 (1989), *allocatur granted*, 527 Pa. 602, 589 A.2d 692

---

3. The same factors were codified at 23 P.S. § 501 when the trial court explained its reasons for granting alimony.

(1991); *Dyer v. Dyer*, 370 Pa.Super. 377, 536 A.2d 453 (1988), *allocatur denied*, 519 Pa. 654, 546 A.2d 58 (1988). *Murphy v. Murphy*, 410 Pa.Super. 146, 154–55, 599 A.2d 647, 651 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992).

Instantly, the trial court was persuaded by "the relative earning capacities of the parties, the duration of the marriage, the Wife's contribution as homemaker, the parties' relative needs, the Husband's marital misconduct, and the Wife's relative lack of sufficient property, including property distributed under equitable distribution, to provide for her reasonable needs." Trial Court Opinion, November 9, 1990, at 12. The court also considered that appellee made significant contributions to the twenty-two year marriage as homemaker. *Id.* Accordingly, the court ordered appellant to pay $300 per month to help appellee with "very real financial needs—until such time as [appellant] retires and [appellee] begins to receive income from [appellant's] pension. . . ." *Id.*

We find that the trial court properly balanced several factors in arriving at its alimony order of $300 per month. Moreover, the court's labelling husband's extra-marital affair *before* separation as "marital misconduct" was based upon sufficient evidence. Therefore, the grant of alimony in this case was not erroneous.

## VII. CONCLUSION

We have reversed the trial court's computation of the marital portion of appellant's pension due to his payments to that pension fund in lieu of Social Security. Because the trial court did not yet find, as a matter of fact, the amount which appellant would have accumulated through the Social Security System, we must remand for such fact finding. Of course, the trial court has discretion to rule upon the evidence in record or to allow more evidence for this initial finding. That amount must be subtracted from the stipulated present value of $93,640. The remainder is marital property to be distributed equitably. The marital property does not include post-separation contributions by the employee or employer, but it does include post-separation interest and returns on investment on

the pre-separation portion of the pension. The trial court did not err in refusing to grant appellant a credit for post-separation mortgage payments which he made while appellee lived alone in the marital home.

While we found no error in the trial court's use of the deferred method of pension distribution, the trial court has discretion, in order to achieve economic justice, to again employ that method or the immediate offset method should the trial court find that appellant is now able to afford an immediate buy out. Likewise, although we found no error in granting permanent alimony in this case, the trial court, after recalculating the distribution of the marital portion of appellant's pension, may conclude that a modification of the previous alimony award is necessary in order to obtain economic justice between the parties. Accordingly, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

The final decree of November 19, 1991 is reversed in part and affirmed in part. The case is remanded for further proceedings. Jurisdiction of this Court is relinquished.