J-S01033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LISA BEURY | : | IN THE SUPERIOR COURT OF |
| | : | |
| v. | : | |
| | : | |
| KENNETH BEURY, | : | |
| | : | |
| Appellant | : | No. 1112 MDA 2016 |

Appeal from the Decree June 9, 2016
in the Court of Common Pleas of Northumberland County,
Civil Division, No(s): 14-CV-72

BEFORE:  GANTMAN, P.J., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:           **FILED MARCH 09, 2017**

Kenneth Beury ("Husband") appeals from the Decree (hereinafter "the Divorce Decree") that divorced him and Lisa Beury ("Wife") from the bonds of matrimony, equitably distributed the parties' marital property, and awarded Wife alimony and attorney's fees.  We affirm.

The parties married in 1989.  At the time of the hearing before the Divorce Master, Cindy Kerstetter, Esquire (hereinafter "the Master"), Wife was 56 and Husband was 57.  The parties never had children of their own, though Husband had two children from a prior marriage,[1] which ended upon the untimely death of Husband's first wife.  In connection with his first wife's death, Husband receives an annuity of $1,250 per month, which he will receive until his death.

---

[1] At the time of the Master's hearing, Kenneth Beury, Jr. ("Kenneth") was 36, and Sarah Beury ("Sarah") was 29.

Throughout their 24-year marriage, the parties resided at 142 East Melrose Street, Marion Heights, Pennsylvania (hereinafter "the marital residence").[2]  Before the parties married and moved into the marital residence, Wife resided with her father and sister, Cheryl Roseman ("Roseman"), in a house in Ashland, Pennsylvania (hereinafter "the Ashland residence"), which is approximately 15 minutes away from the marital residence.  Wife and Roseman jointly own the Ashland residence.  At the time of the Master's hearing, Roseman continued to reside in the Ashland residence, though her father had passed away.  Roseman testified that the Ashland residence has no heat on the second floor, and only one "usable bedroom," located on the second floor (which Roseman does not use during the winter due to the lack of heat).[3]  Accordingly, Roseman testified that it would not be prudent for Wife to live in the Ashland residence after the divorce.

Wife was a homemaker during the entirety of the parties' marriage, and cared for Husband's children.  Wife's employment history is limited to one year of working in a sewing factory following her graduation from high school, before the parties married.  Wife has no postsecondary education.

---

[2] Husband placed a $10,000 down payment on the marital residence when he purchased it in 1989.  At the time of the Master's hearing, the mortgage on the marital property had been satisfied.

[3] Husband's appraiser valued the Ashland residence at $15,700.

Husband works as a laborer, and currently earns $19 per hour.[4] Husband did not graduate from high school. He was the sole income-earner during the parties' marriage. Wife was financially dependent on Husband's income. The parties had a relatively modest standard of living during the marriage, given their limited income and assets.

Both parties suffer from health ailments, and seek treatment from the same local physician. Importantly, this physician issued a letter stating her medical opinion that Wife was "indefinitely" unfit to seek any employment due to her multiple ailments (which include, *inter alia*, diabetes, glaucoma, depression, and hypertension). Husband suffers from neuropathy in his feet and arthritis.

The parties separated in January 2014, after Husband allegedly engaged in an affair, which Husband disputes. Wife continues to reside in the marital residence, along with Sarah, who does not pay rent. In January 2014, Husband left the marital residence and initially moved in with his then-girlfriend. According to Husband, however, that relationship ended and he now lives in Kenneth's house.

Wife filed a Divorce Complaint in January 2014. The parties' only significant marital asset is the marital residence, which an appraiser valued at approximately $79,000. A separate appraiser valued the parties' personal property at $18,745, much of which pertained to Husband's hobbies, and

---

[4] Prior to the divorce, Wife received health insurance through Husband's employer.

included various hunting and fishing items. Additionally, Husband has a 401(k) account through his employer, which was worth approximately $10,000 at the time of Wife's filing of the Divorce Complaint.[5]

Following the Master's hearing on August 25, 2015, the Master issued a Report and Recommendations (hereinafter "Master's Report") on January 13, 2016, wherein she recommended, *inter alia*, that (1) Wife be awarded the marital residence, in full;[6] (2) Husband retain the full value of his 401(k) account; (3) Husband continue to pay Wife APL in the amount of $1,362 per month, until the divorce was finalized, at which time Husband shall pay Wife alimony of $1,000 per month; and (4) Husband pay half of Wife's attorney's fees, or $2,694.24. Husband filed timely Exceptions to the Master's Report, asserting, *inter alia*, that the Master erred in awarding Wife the marital residence where (1) if Husband received the marital residence, Wife could live in the Ashland residence that she jointly owns with Roseman; and (2) Wife was not required to compensate Husband for any of his equity in the marital residence.

On June 9, 2016, the trial court entered the Divorce Decree, which provides as follows:

---

[5] At the time of the Master's hearing, Husband's 401(k) had a vested balance of approximately $6,300, as he had taken out a loan from the account to purchase a second car. Wife has no separate retirement savings.

[6] The Master did not award Husband a rental credit, stating that Wife has no income aside from the alimony *pendente lite* ("APL") that she receives from Husband.

… [Husband's] Exceptions to [the] Master's Report are GRANTED, in PART, as follows:

1. The Master's conclusion to award the marital residence to Wife, *in toto*, was proper under the circumstances; however, the failure to award Husband any rental credit due to Wife's lack of income was not equitable here. **Compare Schneeman v. Schneeman**, 615 A.2d 1369 (Pa. Super. 1992) (fair rental credit awarded indirectly due to reduction in alimony).

2. The marital [residence] was the only significant asset accumulated by the parties during their marriage.

3. In recompense for his contributions toward the acquisition of the asset, the Master did not adequately provide for Husband's interest and share of the marital residence.

4. In the event Wife remains in the marital residence, she will have to pay Husband a fair rental value [] (one-half of $500.00 per month) in the sum of $250.00 per month.[FN] Husband shall convey his interest in the marital [residence] to Wife by deed within 90 days of notice of intent to remain in the premises from Wife. The transfer expenses are to be borne by Husband. Wife is responsible for all taxes, utilities and expenses of the marital [residence].

> [FN] A concern is the ability of [Wife,] with her limited income[,] to maintain the expense of home ownership, so she might just sell it. This would be unfair to Husband to not share in the net proceeds of a sale of the home by [Wife].

5. Wife may not encumber or permit any liens to be entered as to the marital residence without the consent of Husband.

6. If Wife sells the marital residence, she will have to pay $28,870.00 out of the net proceeds to Husband within 10 days of the closing on the sale.

7. In the event of Wife's death[,] and the marital residence has not been sold to a third party, Husband shall be entitled to the sum of $28,870.00 from her estate upon sale or transfer of this residence.

* * *

9.  In all other respects, the recommendations of the Master are adopted by this [c]ourt.

Divorce Decree, 6/9/16 (footnote in original).

Husband timely filed a Notice of Appeal from the Divorce Decree. The trial court ordered Husband to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Husband timely complied. In response, the trial court issued a Statement in Lieu of Opinion.

Husband now presents the following issues for our review:

1.  Whether the trial court abused its discretion when it awarded ninety percent of the parties' assets to [Wife,] even though the parties are of similar advanced age, have similar education, are both in poor health, and when [Wife] owns a one-half interest in a non[-]marital residence where she resided prior to her marriage to [Husband]?

2.  Whether [Wife's] alimony should be terminated[,] when the parties' situations are similar and [Wife] has received 90% of the parties' assets?

3.  Whether [Husband] should be required to make payment toward [Wife's] attorney's fees when he is already paying alimony each month and when he received only ten percent of the assets[,] and his income is insufficient to both support himself and pay Wife alimony?

Brief for Appellant at 4 (issues renumbered for ease of disposition).

Husband first argues that the trial court abused its discretion by fashioning an inequitable distribution of the parties' marital property, wherein Wife purportedly received approximately 90% of the property, while Husband is "left destitute" because of the "lopsided … 90/10 split" of the

- 6 -

parties' assets.  *Id.* at 8, 14; *see also id.* at 12 (asserting that the parties' age, ill health, and education level is similar).  Husband emphasizes that Wife was awarded the marital residence, but, according to Husband, "Wife can easily move back to the Ashland residence[,] whereas it is Husband who now has no place to live[.]"  *Id.* at 11.  Husband disputes the Master's finding that it was not possible for Wife to move into the Ashland residence because it has only one suitable bedroom and no heat on the second floor. *Id.* at 12-13.  According to Husband, "[t]hat finding, and the Master's complete ignoring of the fact that Husband is currently living on his son's couch[,] demonstrates that the Master was either biased, or was manifestly unreasonable in her decision."  *Id.* at 13.

> We review equitable distribution matters as follows:
>
> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure.  An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.  When reviewing an award of equitable distribution, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (internal citations and quotation marks omitted).  A trial court has "the authority to divide the award as the equities presented in the particular case may require."  *Drake v. Drake*, 725 A.2d 717, 727 (Pa. 1999); *see also Williamson v. Williamson*, 586 A.2d 967, 970 (Pa. Super. 1991) (observing that equitable

distribution must be equitable, but it need not be equal). Section 3502(a) of the Divorce Code outlines the factors that a trial court should consider in fashioning an equitable distribution of marital property. **See** 23 Pa.C.S.A. § 3502(a)(1)-(11). "We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." **Morgante v. Morgante**, 119 A.3d 382, 387 (Pa. Super. 2015) (citation omitted).

Here, the trial court addressed Husband's challenge to the division of the marital property as follows:

> The Master awarded Wife the marital [residence] on the basis that [Wife] was totally dependent financially on [] Husband; she needs a place to live after twenty-four years there; she is medically unable to work; [] Husband's daughter[, Sarah,] is in the home [still]; and, [Wife] has no other security for her future.[FN 1] [Wife] would have to subsist on alimony from Husband of only $1,000.00 a month until she receives social security benefits.
>
> > [FN 1] Husband's argument that [Wife] could live with [Roseman in the Ashland residence] was properly rejected by the [M]aster on the basis that it was unfit for both [Wife and Roseman] to live there[,] and it could not be imposed against their wishes.
>
> In view of the circumstances, [the trial c]ourt accepted the Master's recommendation; however, in an attempt to provide some offset to Husband[,] there was imposed a rent payment back to him of $250.00 per month. Another concern was that if Wife realized she could not afford to maintain the marital [residence], it would be unfair to Husband to allow Wife to sell it, or if she predeceased him, for her estate to realize the benefits

of the value of the home to the exclusion of Husband. Thus, [the trial c]ourt determined that the sum of $28,870.00 would be paid to Husband out of the proceeds of any sale (or transfer upon [Wife's] death) of the marital [residence].

* * *

The case at bar does not present circumstances that indicate any present or future ability on the part of Wife to make substantial payments [toward Husband's interest in the marital residence]. On the contrary, her sole support is the alimony from Husband.[FN 2] The rental obligation was imposed to require some monthly payment as to [Husband's] interest. … Moreover, [Sarah] benefits [by continuing to reside in the marital residence with Wife]. On balance, Husband could also have been held to the prior APL amount of $1,362.00 [per month], which was reduced to $1,000.00 as alimony; thus the $362.00 savings can also be considered to offset a theoretical payment plan by Wife on the marital [residence]. (This is then a total payment of $250 rent + $362 = $612.00 per month[,] and this would equate to $7,344.00 per year, which would pay for Husband's interest [in the marital residence] in four years). Husband is benefitting from these monthly adjustments[,] as well as receiving a lump sum in the event of a sale or upon Wife's death. Economic justice is being achieved.

[FN 2] At only $1,000.00 per month, [W]ife would likely also require governmental assistance to reside elsewhere.

Trial Court Statement in Lieu of Opinion, 8/24/16, at 3-4 (footnotes in original). We are persuaded by the trial court's rationale, which is supported by the record.

Initially, Husband does not explain how he came to the conclusion that Wife received approximately 90% of the marital assets. Indeed, Husband received a significant portion of the parties' personal property, as well as his 401(k) account. Though we are sympathetic to Husband's position, the trial

court's distribution of marital property was the most equitable division possible under these particular circumstances, wherein Wife is undisputedly medically incapable of seeking any type of employment, and the parties' only significant asset is the marital residence. Moreover, the trial court properly exercised its discretion in modifying the Master's initial recommendation as to the division of the marital residence in order to compensate Husband for his interest in this asset. To the extent that Husband challenges the Master's assessment of Roseman's testimony that it would not be prudent/possible for Wife to move into the Ashland residence (given that it has only one functional bedroom and no heat on the second floor), we must defer to the Master's credibility finding. **See Morgante, supra**. In any event, as the trial court correctly pointed out, it lacks the power to compel Wife and Roseman to live together. Finally, contrary to Husband's claim, our review of the record reveals no bias on the part of the Master. Accordingly, as we discern no abuse of discretion in the trial court's equitable distribution award, Husband's first issue lacks merit.

In his second issue, Husband asserts that the trial court abused its discretion when it awarded Wife alimony of $1,000 per month, as "Wife either has the money available to support herself or does not need it." Brief for Appellant at 16. Husband contends that "[e]ven though Wife is unable to work, the equitable distribution award, the marital [residence], and the money she received in [APL] are sufficient for Wife to provide for her own

reasonable needs, particularly when [Sarah] lives with Wife and earns a gross income of $591.04 per week." *Id.* at 15-16.

> Our standard of review over an alimony award is an abuse of discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (citation and quotation marks omitted). In considering a request for alimony, the trial court must consider the statutory factors enumerated in 23 Pa.C.S.A. § 3701(b), which include, *inter alia*, the duration of the marriage; the contribution of a spouse as homemaker; the relative needs of the parties; and whether the party seeking alimony is incapable of self-support through appropriate employment. *Id.* § 3701(b)(5), (12), (13), (17).

Here, it is undisputed that Wife is medically unable to self-support through any means of employment, and was financially dependent upon Husband for the entirety of their 24-year marriage. Wife contributed to Husband's earning power and overall quality of life by being a homemaker and caring for his two children from a prior marriage. Moreover, when the parties' divorce is final, Wife, who suffers from several serious maladies, will

- 11 -

lose her health insurance, which she previously received through Husband's employer. Accordingly, Wife could conceivably incur significant out-of-pocket medical expenses in the future, and, absent alimony from Husband, Wife would have no source to cover such expenses. Additionally, even though Wife received the marital residence in equitable distribution, she must pay for its upkeep (including taxes, utilities, maintenance, *et cetera*).[7] Wife must also pay Husband $250 per month in rent. Finally, of

---

[7] The Master found that Sarah did not pay any rent to live in the marital residence, either before or after the parties separated. Accordingly, contrary to Husband's urging, Sarah's income is irrelevant insofar as Wife's need for reasonable alimony is concerned.

particular note is that Husband's income from his job[8] is supplemented by the $1,250 per month that he receives from his first wife's annuity.

In short, Wife's needs are great; if she did not receive reasonable alimony from Husband, she would have **no** income upon which to survive (until she is eligible to receive Social Security benefits). We conclude that the alimony award achieved economic justice and was in accordance with ensuring that the reasonable needs of Wife, who is unable to support herself through any employment, were met. **See Teodorski**, **supra**. Accordingly, Husband is not entitled to relief on his second issue.

In his third and final issue, Husband contends that "[i]n light of the award of approximately ninety percent of the [marital] assets to Wife, the trial court abused its discretion in ordering Husband to pay Wife one-half of her attorney's fees." Brief for Appellant at 17. According to Husband, Wife "has more than enough money to pay her attorney's fees[,]" and "has not demonstrated … [that] Husband committed any dilatory, obdurate or vexatious conduct throughout the proceedings." **Id.** at 16, 17. Husband argues that in addition to Wife being awarded the marital residence, she also "received [APL] of $1,362.00 for over two years and now receives alimony of

---

[8] Pa.R.C.P. 1910.16-2(e)(1)(B) addresses low income cases in support actions, and sets a "self-support reserve" for the obligor of $931 per month. In the instant case, the Master found that Husband has a monthly gross income from his job of approximately $2,900 per month. After the deduction of $1,000 per month in alimony to Wife, Husband's net income is above the self-support reserve.

- 13 -

$1,000.00 per month, and therefore[,] Wife is not at a financial disadvantage." *Id.* at 17-18.

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another. Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Anzalone v. Anzalone*, 835 A.2d 773, 785-86 (Pa. Super. 2003) (citation and paragraph break omitted); *see also id.* at 786 (stating that counsel fees are awarded only upon a showing of need). "In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also pertinent to our review is that, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder." *Busse v. Busse*, 921 A.2d 1248, 1258 (Pa. Super. 2007) (citations and quotation marks omitted).

At the time of the Master's hearing, Wife had accrued attorney's fees in the amount of $5,588.47.[9] The Master recommended that as "[t]he substantial income inequality between the parties is unquestionable[, t]herefore, some contribution by Husband towards Wife's counsel fees is

---

[9] Wife has obviously incurred additional attorney's fees following Husband's filing of the instant appeal. Wife asserts in her brief that she has incurred attorney's fees in excess of $10,000.00. Brief for Appellee at 22.

- 14 -

appropriate." Master's Report, 1/13/16, at 17 (unnumbered). The trial court agreed with the Master. Both the Master and the trial court were aware of the parties' respective financial situations and arrived at a reasonable determination that is appropriate under the circumstances. Contrary to Husband's assertion, simply because Wife received the marital residence and APL/alimony does not mean that she is no longer at a financial disadvantage insofar as paying for her considerable attorney's fees is concerned. Additionally, Husband is mistaken in implying that, in order for an award of attorney's fees to be proper, there must have been a finding that his conduct was dilatory, obdurate or vexatious. **See Anzalone**, **supra** (stating that counsel fees are awarded upon a showing of need). Accordingly, we conclude that the trial court did not abuse its discretion in awarding $2,694.24 in counsel fees to Wife.

Based on the foregoing, we affirm the Divorce Decree.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2017

- 15 -